UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
SYRACUSE DIVISION

| | | |
|---|---|---|
| Tyler Elkin, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 5:26-cv-514 (AJB/ML) |
| v. | § | |
| | § | COMPLAINT |
| Allied Universal Security Services and | § | |
| Novelis Inc, | § | JURY DEMANDED |
| | § | |
| *Defendant.* | § | |

Plaintiff Tyler Elkin ("Plaintiff"), by his counsel, Harman Green, alleges for his Complaint against Defendants Allied Universal Security Services ("Defendant Allied") and Defendant Novelis Inc ("Defendant Novelis") (collectively "Defendants") as follows:

## PRELIMINARY STATEMENT

1. This case is about Defendants' collective and retaliatory termination of Plaintiff after he raised complaints related to health and safety violations and after he raised complaints of race discrimination.

## JURISDICTION

2. Pursuant to 28 U.S.C. §1331 this Court may properly hear Plaintiff's claims as they arise under a federal statute.

3. Pursuant to 28 U.S.C. §1332 this Court may properly hear Plaintiff's claims as there is complete diversity of the parties and the amount in controversy exceeds $75,000.

4. Pursuant to 28 U.S.C. §1367 this Court may properly hear Plaintiff's State law claims as they arise out of the same nucleus of operative fact so as to create the same case or controversy.

## PARTIES

5. Plaintiff was and is a resident of New York.

1

6.    Defendant Allied Universal Security Services has a headquarters at 450 Exchange, Irvine, CA 92602.

7.    Defendant Novelis Inc has a headquarters at 3550 Peachtree Road NE, Suite 1100, Atlanta, GA 30326.

8.    Defendants were joint employers of Plaintiff, evidence by the fact that Defendant Allied hired and paid Plaintiff, and Defendant Novelis had the ability to control Plaintiff's schedule including the ability to fire him.

**JURY DEMAND**

9.    Plaintiff respectfully requests a trial by jury.

**STATEMENT OF FACTS**

10.    Plaintiff was a Security Officer for Defendants.

11.    Plaintiff had been employed with Defendant Allied for over a year without issue.

12.    Plaintiff began working with Defendant Novelis in March 2024.

13.    Plaintiffs' only work location with Defendants was 448 County Rte 1A, Oswego, NY 13126.

14.    That work location is a recycling plant for Defendant Novelis, one of the world's leaders in shipments of recycled aluminum.

15.    For all of his employment, Plainitff was a capable, qualified, hardworking employee.

16.    On January 8, 2025, Plaintiff lodged the following complaint with Denise Madden, Regional HR Manager:

17.    "Thus far I have attended three days of class, for all three of them the instructors' name was Michael Rathbun. All three times throughout the class he referred to his wife as a "fat pig" while making heavy breathing sounds in reference to her doing anything. At one point we

2

were discussing ramifications for breaking the law (no law in particular, just in general) and someone in the class asked what would happen if X law were broken. Mike's response was and I quote "it depends what race you are". At that point I visibly watched the two African American students we had squirm in their seat. Furthermore, my co-worker Mary-Jane requested that Mike stop calling her Mary-Jane because she goes by Mary - and Mike's response was "Yeah, I'm not going to do that". I brought all of these issues up to our Site Supervisor and our Security Coordinator after my 16 hour course. They were well aware of "how Mike is" and were also surprised that he remained in the position that he is in."

18.    Nothing was done about Plaintiffs' complaint, and Defendants allowed similar racist jokes to persist.

19.    Plaintiff also was privy to openly racist materials, such as an Authentic History of the Ku Klux Kaln, being left out in plain sight in front of customers and coworkers.

20.    Defendant Allied has been known to allow and foster a work environment hostile to Black employees, ie. Office of Federal Contract Compliance Programs, GLOBAL SECURITY SERVICES PROVIDER ENTERS AGREEMENT TO RESOLVE ALLEGED RACIAL HIRING DISCRIMINATION AT HOUSTON FACILITY, October 20, 2023.

21.    On July 8, 2024, Plaintiff first complained to Andrew Myers, Novelis Environmental Health and Safety Leader – Oswego that safety gates at the 'East Gate' were not properly in place.  This violation remained in place for approximately a year.

22.    Plaintiff had complaint that Defendant Novelis failed to maintain adequate safety rails.

23.    These rails are meant to prevent employees from falling approximately four feet when maneuvering iron ingots at the recycling plant.

24.    On July 14, 2025, Plaintiff further witnessed multiple health and safety violations

3

and OSHA violations.

25.    Plaintiff witnessed and complained about unsafe practices to Defendant's managers and leaders.

26.    Plaintiff complained in real time over a live radio.

27.    Specifically, the near-miss on July 14, 2025 was reported in real time on live radio, but the driver was allowed back on-site immediately despite Plaintiff's protest and complaint of unsafe practices.

28.    On July 16, 2025, Plaintiff was given a written Verbal Warning which contained multiple inaccuracies and was clearly designed to harass Plaintiff and retaliate against him.

29.    On the warning, Beth Gray was identified as the witness to Plaintiff's alleged infraction.

30.    Plaintiff was written up for allegedly refusing to open the Main Gate on July 14, 2025.

31.    On July 17, 2025, Plaintiff complained to Beth Gray, stating that he felt the write up was retaliatory.

32.    On July 18, 2025, Plaintiff reported the violations to OSHA and the Department of Justice.

33.    As well, on July 18, 2025, Plaintiff complained to the Department of Transportation Federal Motor Carriage Administration regarding a near-miss collision with a 70,000lb truck, an incident that occurred on July 14, 2025.

34.    In his report, Plaintiff complained that Defendants not only violated health and safety laws, but allowed a work environment openly hostile to race, and Plaintiff complained about the prevalence of material related to the Ku Klux Klan.

35.    Plaintiff was swiftly retaliated against, and was removed from the job site on July

24, 2025 pursuant to the "client's instructions."  The client was Defendant Novelis.

36.    Plaintiff was then, effectively, terminated, as Defendants did not offer additional employment to Plaintiff in any capacity.

37.    As well, Defendants sent a mass email to many coworkers stating if they saw Plaintiff on site, they were to call 911 immediately.

38.    Once Plaintiff complained about health and safety violations that frustrated a client, Defendants terminated him.

39.    Plaintiff was never given a formal reason as to why he was site removed.

40.    Stated differently, Plaintiff's termination was merely a pretext to retaliate against him for complaining about discrimination and health and safety violations.

41.    On or about September 3, 2025, Plaintiff received a notification that he was being called into an exit interview for Defendant Allied.

42.    Plaintiff immediately inquired, stating that he had not resigned and had not been formally terminated.

43.    Defendant Allied responded the same day stating that "I offered you positions in the Syracuse area that you turned down.  I do not have anything in your area."  Defendants made no further effort to contact Plaintiff about his employment from that date, constituting a termination.

## CAUSES OF ACTION
### FIRST CLAIM
**Retaliation under 42 U.S.C. 1981 and the New York State Human Rights Law**

44.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 43 with the same force as though separately alleged herein.

45.     Under 42 USC 1981, 42 USC 1981a, and 42 USC 1981(a) Americans are afforded the right to be free from discriminatory animus.  Likewise, they are afforded protection from retaliation when they complain about race discrimination.

46.     The New York State Human Rights Laws tracks and expands Title VII, which, in turn, relies on the same analysis as 42 USC 1981.

47.     Plaintiff explicitly complained about racist jokes and racist paraphernalia being in the workplace.

48.     Plaintiff was swiftly terminated as a result of his complaints.

49.     As such, Defendants intentionally and willfully violated Plaintiff's right to be free from retaliation, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages, attorney fees, costs, and expenses.

### EIGHTH CLAIM

**Retaliation for complaints health and safety violations in violation of New York Labor Law 240 and 740**

50.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 43 with the same force as though separately alleged herein.

51.     New York Labor Law 240 states that an employee who raises a good faith complaint of a violation that could cause a gravity inflicted injury, such as Plaintiff had on July 18, 2024 and July 20, 2024, is protected from retaliation.

52.     Similarly, New York Labor Law 740 protects employees who raise good faith complaints of unsafe working practices from retaliation such as Plaintiff had.

6

53.    Plaintiff was terminated because he raised serious health and safety complaints.

54.    As such, Defendants intentionally and willfully violated Plaintiff's right to be free from retaliation, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages as the failure to engage in the interactive process was malicious and inexcusable, attorney fees, costs, expenses, and any and all other remedies this Court deems just and proper.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

B. For the second cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements; and

C. For such other and further relief as the Court deems just and proper.

Dated:  New York, NY
March 31, 2026

HARMAN GREEN

By:  _____

Evan Richardson, Esq.
HARMAN GREEN
99 Hudson, Fifth Floor
New York, New York 10013
(646) 248-2288
erichardson@theharmanfirm.com
*Attorneys for Plaintiff*

7